UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ALEXIS L., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:19-cv-1669-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Alexis L. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the Act). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 11. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **DENIED,** and the Commissioner's motion (ECF No. 11) is **GRANTED.**

## <u>BACKGROUND</u>

Plaintiff protectively filed her DIB application on September 13, 2016, alleging disability beginning February 3, 2016 (the disability onset date) due to post-concussive syndrome, migraines, spine injuries, a left shoulder injury, and other impairments. Transcript ("Tr.") 92, 170–77, 187. Plaintiff's application was denied initially on January 31, 2017, after which she requested an administrative hearing. Tr. 98–100, 110–11. On October 15, 2018, Administrative Law Judge

Susan G. Smith (the "ALJ") conducted a video hearing from Alexandria, Virginia. Tr. 20, 37-76. Plaintiff appeared and testified from Buffalo, New York, and was represented by Regina A. Walker, an attorney. Tr. 20. Jacquelyn D. Schabacker, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.*

On December 21, 2018, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. Tr. 20-32. On November 21, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. The ALJ's December 21, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her December 21, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021;

2. The claimant has not engaged in substantial gainful activity since February 3, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.);

3. The claimant has the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease, sacroiliac joint dysfunction, left shoulder impingement, migraines, post-traumatic stress disorder, anxiety, and depression (20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b),[1] except that the claimant could: occasionally reach overhead on the left; occasionally climb stairs and ramps, stoop, kneel, balance, and crouch; never crawl; never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to hazards including dangerous moving machinery and unprotected heights; limited to a moderate noise level and  office level lighting; perform simple, routine, repetitive tasks; would be limited to low stress,  meaning no high production quotas or fast-paced assembly; and  could have superficial contact with the public;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant was born on December 26, 1977 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the  Medical-Vocational Rules as a framework supports a finding that the claimant is "not

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 3, 2016, through the date of this decision (20 CFR 404.1520(g)).

Tr. 20-32.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on September 13, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 32.

## ANALYSIS

Plaintiff asserts three points of error. Plaintiff first argues that the ALJ makes no mention of Plaintiff's alleged impairment of post-concussive syndrome. *See* ECF No. 8-1 at 20-21. Plaintiff next argues that the ALJ did not properly assess the opinions of her treating physicians and also improperly discounted the opinions of the consultative examiner and the non-examining review physician. *See id*. at 21-26. Finally, Plaintiff argues that the ALJ failed to properly assess the consistency of Plaintiff's allegations with the medical evidence. *See id*. at 26-30.  As such, argues Plaintiff, the ALJ's RFC finding was not supported by substantial evidence. *See id*. at 20-26.

The Commissioner argues in response that the ALJ's RFC finding is supported by substantial evidence in the record because: (1) Plaintiff fails to show that her post-concussive syndrome resulted in additional symptoms or limitations that the ALJ failed to consider; (2) the ALJ properly weighed the medical opinion evidence; and (3) the ALJ properly found that Plaintiff's alleged symptoms were not entirely consistent with other evidence. *See* ECF No. 11-1 at 14-24.

5

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Plaintiff, a former corrections officer, alleges she could no longer work because of injuries she experienced when she was assaulted by an inmate. The Court has conducted a thorough review of the record and finds that the ALJ's determination that Plaintiff could still perform a reduced range of light work with specific limitations to account for headaches and shoulder pain is supported by substantial evidence. The ALJ identified substantial evidence in support of her RFC finding, including extensive objective evidence, Dr. Feldman's and Dr. Fineberg's assessments, and portions of Dr. Dave's and Dr. Santarpia's consultative examinations. The evidence establishes that, while Plaintiff could no longer work as a corrections officer, she could still perform less strenuous jobs. Accordingly, Plaintiff was not disabled.

On February 3, 2016, the date her alleged disability began, Plaintiff presented at the Emergency Department ("ED") at Erie County Medical Center ("ECMC") after she was attacked by an inmate. Tr. 279. She was diagnosed with a concussion, facial injuries, and fractured left middle finger. Tr. 282. About three weeks later, Plaintiff saw her primary care provider, Linda Miller, N.P. ("Ms. Miller"), for a follow-up to her ED visit. Tr. 360–62. Ms. Miller assessed sprains, a concussion, a jaw disorder, and other impairments. Tr. 361. She prescribed pain medication and referred Plaintiff to several specialists, including a neurologist and a dentist. Tr. 361–62.

In late February 2016, Plaintiff saw Jennifer McVige, M.D. ("Dr. McVige"), of DENT Neurologic Institute ("DENT"), for a neurologic consultation. Tr. 468–71. Plaintiff reported mood changes and headaches after the attack. Tr. 468. Dr. McVige found Plaintiff had intact memory, attention, concentration, and cognition, with full motor strength and somewhat reduced grip strength. Tr. 469. Plaintiff walked with a normal gait but had an unsteady tandem gait. Tr. 470. Dr. McVige observed decreased range of motion in Plaintiff's neck, diagnosed a concussion and intractable headaches, and prescribed medication and physical therapy. Tr. 470. Dr. McVige also ordered an MRI of Plaintiff's brain and cervical spine. *Id*.

In March 2016, Plaintiff saw Michael Freitas, M.D. ("Dr. Freitas"), an orthopedic specialist, for left shoulder and back pain. Tr. 377–79. Dr. Freitas found that Plaintiff had limited range of motion in her lumbar spine, but she had intact sensation and normal coordination. Tr. 378. Dr. Freitas ordered imaging of Plaintiff's lumbar spine and shoulders. Tr. 378. During a follow-up appointment later that month, Dr. Freitas noted that spine imaging showed a minimal disc bulge without stenosis, while shoulder x-rays were normal. Tr. 381–83.

In late March 2016, Plaintiff began a course of physical therapy ("PT") for headaches, dizziness, blurred vision, and neck pain. Tr. 365. In April 2016, Plaintiff informed staff in Dr. McVige's office that she was slowly improving with physical therapy. Tr. 462. During an April 2016 appointment, Plaintiff complained to Dr. Freitas of persistent back and left shoulder pain. Tr. 385. Dr. Freitas ordered imaging of Plaintiff's shoulder to rule out a rotator cuff tear. Tr. 386. He also administered an injection for shoulder pain. *Id*. Over the next six months, Plaintiff underwent several trigger point injections and occipital nerve blocks. Tr. 417–21, 425–40, 447–61. During a May 2016 follow-up with Dr. Freitas, Plaintiff reported persistent left shoulder pain. Tr. 388. Dr.

Freitas noted that a recent MRI showed intact tendons and recommended another month of physical therapy. Tr. 389.

In August 2016, occupational therapist Kevin King, OTR/L ("Mr. King"), completed a functional capacity evaluation. Tr. 267–68. He opined that Plaintiff had mild limitations in postural activities and ambulation; moderate limitations in elevated work, rotation in standing, and stair-climbing; and major limitations in elevated work above 60 degrees and low-level postural activity. Tr. 268. Mr. King indicated that Plaintiff could no longer meet certain demands of her previous job, such as restraining inmates. Tr. 269.

During an August 2016 appointment with Dr. McVige, Plaintiff reported 50% improvement in symptoms. Tr. 444. Although injections and physical therapy were helpful, she still had daily headaches. *Id*. Dr. McVige found that Plaintiff had appropriate attention and concentration, intact memory and cognition, full strength, normal coordination, and an unsteady tandem gait. Tr. 445. Dr. McVige prescribed new medications for headaches. Tr. 446. In September 2016, Plaintiff informed Dr. McVige that trigger point injections were helpful, although she still reported three to four headaches per week. Tr. 441.

When Plaintiff returned to Dr. Freitas in September 2016, she reported ongoing left shoulder pain. Tr. 391–94. Dr. Freitas observed that imaging did not show internal derangement of the shoulder, but Plaintiff had limited shoulder range of motion and strength with significant tenderness to palpation. Tr. 392. Dr. Freitas assessed impingement syndrome and bursitis of the left shoulder and advised Plaintiff to pursue a surgical evaluation or pain management. Tr. 392-93.

On October 10, 2016, surgeon Marc Fineberg, M.D. ("Dr. Fineberg), evaluated Plaintiff's left shoulder at the request of Dr. Freitas. Tr. 395–96. He noted that the source of Plaintiff's

shoulder pain was unclear. He also noted that, based on the MRI results, Plaintiff did not have a distinct tear in her rotator cuff or labrum; however, he observed she may have an occult superior labrum or supraspinatus tear which are not visible due to the contrast. Tr. 396. Dr. Fineberg offered Plaintiff a diagnostic arthroscopy with possible debridement and acromioplasty, but she elected to try another subacromial cortisone injection and PT before having the arthroscopy done. *Id.*

Later that month, Plaintiff saw Jafar Siddiqui, M.D. ("Dr. Siddiqui") for pain evaluation. Tr. 308–10. Dr. Siddiqui observed that Plaintiff had normal gait and station with full arm and leg strength. Tr. 310. Plaintiff could rise from a seated position and get on and off the examination table without difficulty, but she had reduced range of motion in her cervical spine. Tr. 310. Dr. Siddiqui recommended epidural injections for pain control. Tr. 308.

In November 2016, Dr. McVige examined Plaintiff and opined that Plaintiff's worsening left arm symptoms might be caused by a disc extrusion. Tr. 424. She advised Plaintiff to avoid heavy lifting. *Id.* In December 2016, Plaintiff underwent a cervical fluoroscopy procedure. Tr. 330. Nerve conduction studies completed that month were within normal limits, but electro-diagnostic evidence suggested moderate cervical radiculopathy. Tr. 534.

On January 20, 2017, Nikita Dave, M.D. ("Dr. Dave"), completed a consultative physical examination for the state disability agency. Tr. 478–82. Dr. Dave noted that Plaintiff walked with a normal gait and could stand on her heels and squat to half-depth. Tr. 480. Plaintiff had decreased range of motion in her cervical and lumbar spine and left shoulder, but she had full strength in her arms and legs with no sensory deficits and intact hand and finger dexterity and grip strength. Tr. 481. Dr. Dave opined that Plaintiff may have moderate to marked limitations in all activities during headaches. Tr. 482. Otherwise, Plaintiff was moderately limited at prolonged sitting, standing,

walking, and repetitive gross motor manipulation with her left arm, and she was moderately limited at lifting, carrying, pushing, and pulling with her left arm. Tr. 482.

Also on January 20, 2017, Susan Santarpia, Ph.D. ("Dr. Santarpia"), completed a consultative psychiatric evaluation on behalf of the state agency. Tr. 473–76. Dr. Santarpia observed that Plaintiff had intact attention and concentration, grossly intact memory, average-range cognitive function, and fair insight and judgment. Tr. 474–75. Dr. Santarpia noted that Plaintiff could understand simple instructions, perform simple tasks, maintain attention and concentration, and appropriately deal with stress. Tr. 475. She also noted that Plaintiff was mildly impaired at learning new tasks, performing complex tasks, making decisions, and relating with others. *Id*.

G. Feldman, M.D., a state agency medical consultant, reviewed the evidence of record as of January 27, 2017 and opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently 10 pounds. Tr. 85-86. Dr. Feldman also indicated that Plaintiff's ability to push and/or pull was "limited in upper extremities" and specified "left." L. Hoffman reviewed the evidence of record as of January 26, 2017 and opined that Plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods. Tr. 87.

On January 30, 2017, Dr. Fineberg evaluated Plaintiff's left shoulder again. Tr. 490. Plaintiff reported some improvement with physical therapy, but she still felt weakness and numbness in her left arm. Tr. 489.

Plaintiff reported some improvement to Dr. McVige in March 2017. Tr. 662–65. She stated she had been doing very well until she had to discontinue treatment because worker's compensation would not cover it. *Id*. Dr. McVige stated this setback was a "travesty" because

Plaintiff was "getting so much better" with injections. Tr. 665. He also indicated he would encourage the insurance company to "reinstate" these treatments. *Id.*

In April 2017, Plaintiff saw Dr. Fineberg again and reported pain radiating down her left arm. Tr. 491. Dr. Fineberg opined that Plaintiff's cervical condition might warrant surgery. Tr. 492.

Dr. Siddiqi reevaluated Plaintiff in May 2017. Tr. 557–59. Plaintiff reported neck pain that radiated into her left shoulder and arm. Tr. 557. Dr. Siddiqi recommended epidural steroid injections. Tr. 558.

In July 2017, Plaintiff told Dr. McVige that her condition had regressed after discontinuing injections. Tr. 658. Dr. McVige prescribed medication for headaches, balance, mood stabilization, and pain. Tr. 661. She also advised Plaintiff to consult a lawyer about treatment options available through worker's compensation. Tr. 661.

From August 2017 through February 2018, Plaintiff received several injections for headaches. Tr. 633–35, 641–44, 667–70. She reported experiencing at least 50% improvement in headaches with Botox. Tr. 633. Plaintiff also received trigger-point injections (Tr. 630–41, 650, 655–57) and occipital nerve blocks (Tr. 644–46, 652–54).

In February 2018, Plaintiff saw John Pollina, M.D. ("Dr. Pollina"), for a neurosurgical evaluation on referral from Dr. Freitas. Tr. 675–77. Plaintiff reported ongoing neck and lower back pain but was unsure whether she wanted to pursue surgery. Tr. 675. Dr. Pollina observed that Plaintiff sat comfortably and had normal station, with intact cervical and upper-extremity range of motion and full strength and intact pinprick sensation in her arms. Tr. 676. Plaintiff also had a normal gait and station, with no tenderness to palpation in her lumbar spine and intact lower

11

extremity strength, sensation, and range of motion. *Id*. Dr. Pollina prescribed additional physical therapy and imaging. *Id*.

During an appointment with Dr. McVige in February 2018, Plaintiff reported her headaches were greatly improved with injections. Tr. 628. Dr. McVige suggested medical marijuana to further reduce Plaintiff's symptoms. *Id*.

Plaintiff returned to Dr. Siddiqi for re-evaluation in March 2018. Tr. 697–99. She denied any changes in her condition. Tr. 697. During this interval, Plaintiff continued to receive trigger-point and Botox injections. Tr. 623–25, 682, 685–700, 717–26.

In May 2018, Dr. Pollina noted that recent lumbar imaging showed a disc protrusion with no significant central canal or foraminal stenosis (Tr. 678, 700), while cervical imaging showed a disc herniation with small protrusions (Tr. 679). Dr. Pollina discussed surgical intervention for Plaintiff's cervical spine condition, but Plaintiff indicated that she wanted to continue conservative treatment for the time being. Tr. 679. Dr. Pollina noted that Plaintiff's lumbar spine condition did not warrant surgery and recommended conservative management, to which Plaintiff agreed. *Id*.

Dr. Siddiqi saw Plaintiff for a reevaluation in July 2018. Tr. 708–10. Plaintiff reported that injections provided 40% pain relief for about three weeks. Tr. 708. Dr. Siddiqi indicated that further injections may be needed in the future and advised Plaintiff to return for follow up as needed. Tr. 709.

Contrary to Plaintiff's claims, the ALJ carefully evaluated Plaintiff's allegations, as well as the record as a whole, and the Court finds that the ALJ's RFC finding was supported by substantial evidence. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the

hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, it is the claimant's burden, not the Commissioner's, to demonstrate the functional limitations she claims. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating by reference 42 U.S.C. § 423(d)(5)(A)); *Cage v. Comm'r of Soc.*

*Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (it is Plaintiff's burden to establish that she is disabled);

*Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (finding an ALJ can deny benefits based on a lack

of evidence on a matter for which the claimant bears the burden of proof); *Lesterhuis v. Colvin*,

805 F.3d 83, 87 (2d Cir. 2015) (citations omitted) ("The claimant bears the ultimate burden of

proving [disability] throughout the period for which benefits are sought."); *Parker v. Berryhill*,

No. 17-CV-252-FPG, 2018 WL 4111191, at *4 (W.D.N.Y. Aug. 29, 2018) (holding that a plaintiff

bears the burden of showing her RFC is more limited than that found by the ALJ) (citations

omitted).

In light of this burden, Plaintiff is specifically required to demonstrate the existence of a

severe impairment or impairments that resulted in an RFC preventing her from performing

substantial gainful activity during the relevant period. *See Poupore v. Astrue*, 566 F.3d 303, 306

(2d Cir. 2009); *see also* 20 C.F.R. § 404.1512.  Plaintiff has not met that burden here.

Plaintiff first argues that the ALJ failed to consider post-concussive syndrome as a severe

impairment. *See* ECF No. 8-1 at 22–23. At the second step of the sequential evaluation, an ALJ

considers whether the claimant has at least one severe impairment or combination of impairments

that meets the twelve-month durational requirement for establishing disability. *See* 20 C.F.R. §

404.1520(a)(4)(ii). An impairment is severe if it "significantly limits [the claimant's] physical or

mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1522(a) (defining "non-severe"

impairments). If the claimant does not have any severe impairments, then the claimant is not

disabled, and the sequential evaluation ends. *Id*. However, if the claimant has at least one severe

impairment or combination of impairments, then the evaluation continues, and the ALJ considers

*all* impairments and symptoms when evaluating RFC. *See* 20 C.F.R. § 404.1529, 404.1545(a)(2).

Here, the ALJ acknowledged that Plaintiff was diagnosed with a mild concussion after she was attacked at work by an inmate in February 2016. Tr. 26, 282. Although the ALJ did not specifically list post-concussive syndrome[2] as a severe impairment, the ALJ found that Plaintiff's migraine headaches and cervical impairment were severe. Tr. 22. The ALJ also discussed Plaintiff's neck complaints and headaches at length and fully considered her allegations of cognitive limitations. Tr. 24, 29. Upon review of the ALJ's decision, the Court finds that the ALJ properly considered all of Plaintiff's symptoms when evaluating her RFC. Tr. 26–30.

Even assuming, *arguendo*, that post-concussive syndrome should have been recognized as a separate severe impairment, any alleged error is harmless. If the ALJ fails to make a severity determination as to an impairment, it is a harmless error if the ALJ finds other severe impairments, and thus continues the disability analysis and considers all impairments in the RFC determination. *See Poles v. Berryhill*, No. 17 CV 6189 MAT, 2018 WL 1471884, at *3 (W.D.N.Y. Mar. 26, 2018) (quoting *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"); *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. Mar. 24, 2010) (errors at step two are harmless as long as the ALJ continues with the sequential analysis)..

As noted above, the ALJ considered Plaintiff's February 2016 concussion, discussed Plaintiff's neck complaints and headaches at length, fully considered her allegations of cognitive

---

[2] There is no definitive test for post-concussion syndrome. Diagnosis is mainly based on a history of head injury and reported symptoms, which are often vague and non-specific. Common symptoms include headache, dizziness, sleep problems, psychological symptoms and cognitive problems. A physical exam, and diagnostic imaging such as a CT or MRI scan of the head, may be done to evaluate symptoms. *See* WebMD, https://www.webmd.com/brain/post-concussion-syndrome.

limitations, and ultimately found her migraine headaches and cervical degenerative disc disease were severe impairments. While Plaintiff claims that post-concussive syndrome was a severe impairment, she failed to show that this condition resulted in additional symptoms or limitations that the ALJ failed to consider Accordingly, the Court finds no error.

Plaintiff next argues that the ALJ assigned too little weight to workers' compensation evaluations and did not include certain limitations from Dr. Dave's and Dr. Feldman's opinions. *See* ECF No. 8-1 at 21–26. However, the ALJ carefully evaluated all medical opinions within the Commissioner's framework for considering opinion evidence.[3] Applying this framework, the ALJ gave partial weight to Dr. Dave's consultative assessment. Tr. 29, 482. In weighing this opinion, the ALJ concluded that Plaintiff's headaches were not as limiting as Dr. Dave suggested. Tr. 29. The ALJ noted that Plaintiff's headaches improved substantially with treatment, such as Botox injections. Tr. 29, 628, 633. It is proper for the ALJ to consider improvement with treatment. *See Reices-Colon*, 523 F. App'x at 799 (improvement with treatment is properly considered in concluding claimant not disabled); *Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)) (ALJ may consider conservative treatment).

Nevertheless, the ALJ accounted for Plaintiff's residual symptoms by limiting her exposure to noise, light, and stress. Tr. 29. The ALJ found that Dr. Dave's remaining conclusions were generally consistent with Plaintiff's pattern of conservative treatment and examiners' findings. As

---

[3] There was a recent change to the Administration's regulations regarding the consideration of opinion evidence for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). As this claim was filed on or before March 27, 2017, the rules in 20 C.F.R. § 404.1527 applied to Plaintiff's case. *See Smith v. Colvin*, No. 16-CV-6150L, 2018 WL 1210891, at *2 (W.D.N.Y. Mar. 8, 2018).

explained above, Plaintiff reported improvement with injections (26–27, 544, 547, 550, 662, 675), and musculoskeletal examination findings were largely normal aside from limited cervical and lumbar range of motion (Tr. 310, 424, 445, 469, 481, 558, 628, 660, 664, 676, 678, 698).

The ALJ gave Dr. Feldman's non-examining assessment great weight, finding the opinion was consistent with other evidence in the record. Tr. 28, 85–86. After reviewing Dr. Dave's evaluation and other evidence of record, Dr. Feldman opined that Plaintiff could meet the basic demands of light work and could frequently balance and occasionally climb, stoop, kneel, crouch, and crawl, with limited pushing and pulling with her left arm. Tr. 85–86. It was not error for the ALJ to give significant weight to a well-supported assessment from a non-examining medical consultant. *See Camille v. Colvin*, 652 F. App'x 25 (2d Cir. 2016); *Ridosh v. Berryhill*, No.16-CV-6466L, 2018 WL 6171713, at *6 (W.D.N.Y. Nov. 26, 2018) ("[A] non-examining physician opinion may be entitled to more weight than the opinion of an examining physician . . . such as where the opinion of a treating or examining physician is contradicted by substantial evidence in the record.").

The ALJ also gave significant weight to Dr. Fineberg's opinion that Plaintiff required light-duty restrictions for her left shoulder. Tr. 29. The ALJ noted that recent physical examinations showed intact sensation, strength, and range of motion in Plaintiff's extremities (Tr. 29, 676, 678), but nevertheless, the ALJ accounted for Plaintiff's subjective complaints of left shoulder pain and numbness by limiting her to light work with only occasional overhead reaching on the left (Tr. 25, 29).

The ALJ also considered Mr. King's functional capacity evaluation. Tr. 29, 268–69. Mr. King opined, in part, that Plaintiff had mild limitations in postural activities and ambulation; moderate limitations in elevated work, rotation in standing, and stair-climbing; and major

limitations in elevated work above 60 degrees and low-level postural activity. Tr. 268. He indicated that Plaintiff was unable to perform several work demands of her previous job, such as restraining an individual. Tr. 269. The ALJ noted that Mr. King's conclusions were broadly consistent with light work. Tr. 29. However, the ALJ found insufficient evidence to support major limitations in manipulation. *Id.*

In evaluating Plaintiff's cognitive abilities, the ALJ gave partial weight to Dr. Santarpia's January 2017 consultative examination. Tr. 29, 473–76. Dr. Santarpia opined that Plaintiff was mildly impaired at learning new tasks, performing complex tasks, making decisions, and relating adequately with others. Tr. 475. The ALJ credited these findings except for the limitation in learning new skills, which was inconsistent with other examiners' findings of intact or normal cognition. Tr. 29, 310, 445, 5, 469, 558, 628, 660, 664, 698.

Based on all the evidence, the ALJ concluded that Plaintiff retained the ability to perform a range of light work. Tr. 25. The ALJ accounted for Plaintiff's left shoulder impairment both by limiting Plaintiff to light work, which requires lifting 20 pounds at most, and by finding she could perform only occasional overhead reaching on the left. Tr. 25, 29. The ALJ also accounted for Plaintiff's neck and back by pain by limiting her to only occasional stooping, kneeling, balance, crouching, or crawling. Tr. 25. Additionally, although medical evidence did not establish significant cognitive problems, the ALJ gave Plaintiff the benefit of the doubt by limiting her to limited to simple, routine, repetitive tasks that were low stress and involved only superficial contact with the public. Tr. 25, 29.

Although medical opinions did not agree on Plaintiff's precise limitations, an ALJ is not required to determine RFC based on one particular medical opinion. *See Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("[T]he fact that an

RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'"). Furthermore, as noted above, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d at 122 ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); *Veino v. Barnhart*, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). In so doing, the ALJ may "choose between properly submitted medical opinions." *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588.

Plaintiff also argues that the ALJ failed to consider various opinions from Drs. McVige, Pollina, Siddiqi, and others indicating she was totally disabled. *See* ECF No. 8-1 at 24–25. While Plaintiff notes that treating sources claimed she had a temporary 100% impairment for worker's compensation purposes, the ALJ correctly noted that such statements did not reflect SSA's standards and lacked value for assessing RFC. Furthermore, these sources did not provide assessments of Plaintiff's functional limitations; rather, they indicated Plaintiff had a 100% temporary disability for purposes of worker's compensation. Tr. 423, 441, 469, 519, 627, 660, 664, 679, 706.

As the ALJ correctly observed, these assessments reflected worker's compensation rules, not Social Security disability standards. Tr. 30. *See* 20 C.F.R. § 404.1504 (decisions by other agencies about workers' compensation and other benefits programs are not binding on SSA because the determinations are not based on SSA's rules). Moreover, the ALJ noted, these assessments appeared temporary in nature, with no specific vocational content. Tr. 33. As such,

these percentage rankings had little value for determining Plaintiff's specific functional abilities, which is the point of assessing an RFC. *See* 20 C.F.R. § 404.1545(a)(1).

Contrary to Plaintiff's third point of error (*see* ECF No. 8-1 Br. at 26–29), the ALJ properly considered Plaintiff's allegations and found they were not entirely consistent with other evidence. The ALJ carefully evaluated Plaintiff's testimony within the Commissioner's framework for evaluating symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; Social Security Ruling (SSR) 16-3p (evaluation of symptoms in disability claims). Plaintiff testified she could not work due her neck impairment, headaches, mid-back pain, left arm pain and numbness, and certain cognitive problems. Tr. 45, 48–51, 58, 64. The ALJ found that Plaintiff's alleged symptoms were not entirely consistent with other evidence. Tr. 26.

The ALJ carefully considered Plaintiff's course of treatment. *See* 20 C.F.R. § 404.1529(c)(3)(iv)–(v) (SSA will consider medication and treatment when evaluating symptoms). As noted above, Plaintiff's course of treatment was conservative; her lumbar condition did not warrant surgery; and there were no plans for neck surgery. Tr. 25, 27, 47, 679. Plaintiff also reported some improvement in pain with trigger-point injections, occipital nerve blocks, and chiropractic care. Tr. 26–27, 46, 441, 444, 544, 547, 550, 662, 675, 708. Plaintiff also reported at least a 50% improvement in headaches with Botox injections Tr. 27, 628, 633. Although treatment did not fully resolve Plaintiff's pain complaints, treatment records showed that her impairments improved with conservative management.

The ALJ also considered objective evidence of Plaintiff's functioning. *See* 20 C.F.R. § 404.1529(c)(2) (SSA will consider objective medical evidence when evaluating symptoms); SSR 16-3p (noting that "objective evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effect those symptoms may have

on the ability to perform work-related activities"). The ALJ noted that physical examinations were largely normal aside from reduced range of motion in Plaintiff's cervical and lumbar spine and, at times, her left shoulder. Tr. 29. The evaluation of the consistency of Plaintiff's allegations and the medical evidence of record is interrelated *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) ("The ALJ's decision to discount [plaintiff's] credibility influenced the ALJ's weighing of medical opinions that were based in part on [plaintiff's] reports, and the ALJ's evaluation of the medical opinions in turn informs whether medical evidence supported [the ALJ's RFC determination.]"

Plaintiff's treating neurologist, Dr. McVige, generally found that Plaintiff had full extremity strength, normal gait, normal coordination, and intact sensation. Tr. 445, 469, 628, 660, 664. Dr. Pollina's findings were similar; Plaintiff had full strength in her arms and legs, intact sensation, intact cervical range of motion, and normal station or gait. Tr. 676, 678. Likewise, Dr. Siddiqui observed that Plaintiff had limited spine range of motion but had well preserved arm and leg strength and a normal gait. Tr. 310, 558, 698. Consistent with treating sources, consultative examiner Dr. Dave found Plaintiff had decreased range of motion in her cervical and lumbar spine and left shoulder but walked with a normal gait, had full strength in her arms and legs, and had intact sensation and hand and finger dexterity. Tr. 27, 481. These examinations simply did not support the range of physical limitations Plaintiff alleged.

As the ALJ noted, objective medical evidence similarly did not bear out Plaintiff's cognitive complaints. Tr. 29. Dr. McVige frequently found that Plaintiff had intact memory, attention, concentration, memory, and cognition (Tr. 24, 445, 469, 628, 660, 664), and Dr. Siddiqui observed that Plaintiff had normal cognition (Tr. 310, 558, 698). Dr. Santarpia also found Plaintiff had intact attention and concentration, grossly intact memory, and average cognitive function. Tr. 29, 474–75. Thus, these normal findings did not substantiate Plaintiff's cognitive complaints.

The ALJ also considered Plaintiff's daily activities. Tr. 24, 27. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

The ALJ observed that Plaintiff completed household tasks, went grocery shopping with her husband, and drove around town. Tr. 24, 27, 57–59, 475, 479. Plaintiff also told Dr. Santarpia that she acted as a primary caregiver for her teenage son. Tr. 473, 475. Plaintiff suggests that her limited activities did not prove she could work full-time. *See* ECF No. 8-1 at 28–29. However, Plaintiff's activities were only one part of the ALJ's evaluation, and although Plaintiff's activities may not have been extensive enough to disprove disability, her ability to complete simple, non-strenuous tasks was relevant in evaluating her allegations.

Finally, Plaintiff argues that the ALJ's step five finding lacked support because the ALJ based her hypothetical questions to the VE on a defective RFC finding. *See* ECF No. 8-1 at 29–30. However, as explained above, the ALJ properly assessed Plaintiff's RFC and substantial evidence supports her conclusion. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion, and accurately reflects the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014)

(internal quotation and citations omitted)). Thus, the VE's testimony provided substantial evidence for the ALJ's conclusion that Plaintiff could perform a significant number of jobs.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, and her findings are supported by substantial evidence substantial evidence in the record as a whole. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE